**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY**

| | | |
|---|---|---|
| TAYLOR KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| KILO CHARLIE HOLDINGS, LLC, | ) | JURY TRIAL DEMANDED |
| and | ) | |
| MERITIZE LENDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW, Plaintiff Taylor Kelly, by and through his undersigned counsel, and for his Complaint against Defendants, states as follows:

**INTRODUCTION**

1.    This is a case about a flight school-lending company partnership that systematically deceives aspiring pilots through false advertising and predatory lending practices, transforming students' career dreams into financial nightmares.

2.    Taylor Kelly, a Kansas resident, enrolled in Defendant Kilo Charlie Holdings, LLC's flight training program based on written marketing materials promising completion "in as little as 5.5 months," "in as little as 6 months," and "in under 7 months." By 2026, the same school now advertises the identical program as requiring "2 years full-time"—a 400% increase that constitutes an admission the original representations were knowingly false.

3.    Defendant Meritize Lending, LLC financed Mr. Kelly's training through an $87,500 loan. Despite Mr. Kelly making monthly payments of $150 since April 2024, his loan balance increased to $99,960 by March 2025—with every dollar applied solely to interest and

1

zero dollars reducing principal. Written loan documents buried provisions requiring repayment "even if such failure is caused by the School ceasing to provide education services."

4.      Nearly three years after enrollment, Mr. Kelly remains without certification while his debt grows. Written emails and text messages document Defendants' scheme: training delays spanning 22 and 68 days, systematic failures to provide qualified instructors, and deliberate mislabeling of refunds..

5.      Defendants' deceptive practices, documented through marketing screenshots, contracts, emails, text messages, and payment records, have caused substantial financial harm to Mr. Kelly and constitute violations of the Kansas Consumer Protection Act, breach of contract, negligence, fraud, and federal lending violations.

## PARTIES

6.      Plaintiff Taylor Kelly ("Plaintiff" or "Kelly"), at all times material hereto, is a 32-year-old individual and citizen of the State of Kansas, residing at 10531 Clubhouse Dr, Kansas City, Kansas 66109.

7.      Defendant Kilo Charlie Holdings, LLC, formerly known as Fly Kilo Charlie LLC and doing business as Kilo Charlie Aviation ("Kilo Charlie"), is a Kansas limited liability company formed on April 6, 2020, with Business ID Number 9626243, and authorized to do business within the State of Kansas. Kilo Charlie's principal place of business is 280 Gardner Dr, New Century, Kansas 66031. On June 5, 2025, Kilo Charlie merged with US Aviation Academy and now operates under the US Aviation Academy name.

8.      Defendant Kilo Charlie can be served via its registered agent: Robert Renfro, 15168 W 154th St, Olathe, Kansas 66062.

2

9. Defendant Meritize Lending, LLC ("Meritize") is a Delaware limited liability company with its principal place of business in Frisco, Texas, authorized to do business within the State of Kansas. Meritize's student loan servicing is conducted through MOHELA (Higher Education Loan Authority of the State of Missouri), located at 633 Spirit Dr, Chesterfield, Missouri 63005.

10. Defendant Meritize can be served via its Kansas registered agent: Northwest Registered Agent LLC, 4601 E. Douglas Ave. S, Wichita, Kansas 67218.

11. Kilo Charlie's key management personnel include Robert Renfro (CEO/COO), Arthur Koenig (COO), Drew Konicek (CEO), Greg Laudick, Chris Distin, Derek Matthews, and Ashleigh Koenig.

### JURISDICTION & VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction over claims arising under 18 U.S.C. § 1964(c) (RICO)), 28 U.S.C. § 1332 (diversity jurisdiction - Plaintiff is a citizen of Kansas; Defendant Kilo Charlie is a Kansas LLC with its principal place of business in Kansas; Defendant Meritize is a Delaware LLC with its principal place of business in Texas; and the amount in controversy exceeds $75,000), and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims).

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

### FACTS COMMON TO ALL COUNTS

#### *Marketing Representations and Enrollment (March 2023)*

14. In early 2023, Kelly began researching professional pilot training programs to pursue a career change in aviation.

15.     Kelly encountered Kilo Charlie's marketing materials through online advertising and the school's website, which prominently featured specific completion timelines for the professional pilot program.

16.     Kilo Charlie's written marketing materials represented that students could "Become a Commercial Pilot in as little as 5.5 months."

17.     Additional marketing screenshots from Kilo Charlie's website and advertising materials represented completion timelines of "as little as 6 months," "as little as 7 months," and "under 7 months."

18.     Kilo Charlie's marketing materials further represented that students could "Train up to 35% faster than any other flight school."

19.     These timeline representations were prominently featured across Kilo Charlie's marketing materials, including website content, social media posts, and promotional materials displayed at the flight school.

20.     Based on these written marketing representations, Kelly believed he could complete the professional pilot program and begin working as a flight instructor within approximately 5.5 to 12 months.

21.     On March 20, 2023, Kelly executed a training contract with Kilo Charlie for the professional pilot program.

22.     The written training contract established a projected graduation date of April 7, 2024.

23.     The contract specified a total program cost of $85,000, covering 290 flight hours and 80 ground hours across multiple certification stages: Private Pilot, Instrument Rating, Commercial Pilot, Certified Flight Instructor (CFI), Certified Flight Instructor Instrument (CFII), Multi-Engine, and Multi-Engine Instructor (MEI) ratings.

*Loan Transaction Details (March 2023)*

24. To finance his training, Kelly applied for and received loan approval from Meritize on March 17, 2023.

25. The loan agreement, titled "H-22 Private Education Loan," specified a total loan amount of $87,500, which included the $85,000 program cost plus a $2,500 origination fee.

26. The loan agreement established a variable interest rate structure based on the 1-month CME term SOFR plus 4.35%, initially calculated at 8.73%.

27. The written loan application, completed by Kilo Charlie personnel, listed Kelly's "Expected Completion Date" as "04/07/2024."

28. The loan agreement defined the "Enrollment Period" as "not to exceed Twelve (12) months from date of disbursement."

29. The loan agreement contained a provision stating Kelly must repay the loan "even if such failure is caused by the School ceasing to provide education services."

30. This provision requiring repayment regardless of school performance was buried in the loan agreement's fine print and not conspicuously disclosed to Kelly.

31. Meritize disbursed approximately $78,955.50 directly to Kilo Charlie on March 24, 2023.

32. The loan agreement specified minimum monthly payments of $150 during the enrollment period, with full repayment structured over 84 months.

33. The loan agreement provided for an "ATP Period" of 21 months following the enrollment period and included language referencing the federal Truth in Lending Act.

*Training Timeline and Documented Failures (April 2023 - March 2026)*

34. Kelly began flight training at Kilo Charlie on April 21, 2023.

35. Kelly successfully completed Phase One (private pilot license) training and obtained his private pilot certificate on July 29, 2023.

36. Immediately following completion of Phase One, Kilo Charlie imposed an unexplained 22-day gap from July 30 to August 21, 2023, during which no Phase Two (instrument rating) training was provided.

37. This 22-day gap is documented in Kelly's written email to Arthur Koenig dated June 15, 2024, in which Kelly stated: "There have been lapses in my training that have occurred with no communication from the school: 7/30/23 - 8/21/23 - Private to Instrument."

38. Kelly's initial instrument rating check ride was scheduled for December 7, 2023, but he was unsuccessful on this first attempt.

39. Kelly successfully completed his instrument rating on January 10, 2024.

40. Kelly began Phase Three (commercial pilot) training on February 16, 2024.

41. By March of 2024, Kelly had completed all Phase Three prerequisites and passed a stage check administered by a Kilo Charlie instructor, certifying he was ready for his commercial pilot check ride.

42. Despite completing all prerequisites by March of 2024, Kilo Charlie failed to schedule Kelly's commercial check ride in a timely manner.

43. Kelly's projected graduation date of April 7, 2024, passed without completion of the program or any notification from Kilo Charlie regarding the delay.

44. A second extended training gap occurred from March 26 to June 2, 2024—a period of 68 days—during which no Commercial to CFI training was provided.

45. This 68-day gap is documented in Kelly's written email to Arthur Koenig dated June 15, 2024, in which Kelly stated: "3/26/24 - 6/2/24 - Commercial to CFI."

46.    In his June 15, 2024 email, Kelly further documented: "When 12 months passed, the school did not inform me of the option to extend loan payments or the reasons behind the delays. I had to speak with other students in order to get this information."

47.    By June 15, 2024, Kelly's written email documented that his graduation date had been pushed back to August 1, 2024—extending the original 12-month timeline to 16 months.

48.    In a subsequent written email dated July 30, 2024, Kelly documented: "I am currently on month 17 of a program they have advertised as low as 5.5 months which they recently changed advertising to 10 months."

49.    Throughout these delays, Kilo Charlie provided no written explanation or communication regarding the causes of the training gaps or revised completion timelines.

50.    As of the filing of this Complaint in March 2026, nearly three years after enrollment, Kelly has not completed the program despite being promised completion within 5.5 to 12 months.

### *Safety and Training Quality Issues*

51.    On May 18, 2024, Kilo Charlie scheduled Kelly for a commercial pilot check ride in Iowa.

52.    This was a critical point in Kelly's progress at Kilo Charlie, and he was facing mounting pressure to finish the program and begin his career as a pilot.

53.    In mid-air, Kelly was told to turn around because he was not given sufficient cash to pay the flight examination fee as it was not paid in advance by Kilo Charlie.

54.    Kelly did fly that day, and did get approximately three hours of training time in but was unable to complete the commercial pilot check ride.

55. On August 28, 2024, Kilo Charlie attempted to schedule Kelly for a CFI check ride using aircraft N51WE.

56. The pilot operating handbook for aircraft N51WE contained weight and balance limitations that made the aircraft inappropriate for demonstrating the maneuvers required for the commercial pilot check ride.

57. On October 12, 2024, Kilo Charlie assigned Kelly an instructor who lacked the FAA-required qualifications to provide CFI training.

58. This incident is documented in text messages dated October 12, 2024, between Kelly and a Kilo Charlie instructor named Collin.

59. In the October 12, 2024 text messages, Collin stated: "idk why they had you scheduled with anyone other than Derek ... per the regs only a cfi with 2 years experience can do your training."

63. Collin's text message further stated: "There's an LOI stating that a cfi with less than 2 yrs can only do 'right seat proficiency' and no maneuvers."

64. Collin's text message continued: "I'm sorry about the lack of knowledge and communication this place has."

65. The October 12, 2024 text messages further reveal that Kelly had "several flights during CFI training with under 2 year instructors" and that these flights "counted towards my CFI program."

66. Federal regulations require that only instructors with two or more years of experience can provide CFI training, potentially invalidating training received from unqualified instructors.

67.    These safety violations and training deficiencies placed Kelly's FAA certifications and aviation career at risk.

### *Financial Harm and Loan Issues*

68.    Because Kelly's projected graduation date of April 7, 2024, passed without program completion, loan repayment obligations began.

69.    Kelly made his first loan payment of $150 on April 19, 2024, while still enrolled in the incomplete program.

70.    According to loan payment records and account statements, Kelly has made monthly payments of $150 since April 2024.

71.    Despite these monthly payments, Kelly's loan balance increased from the original $87,500 to $99,960 by March 2025.

72.    Payment records from MOHELA, Meritize's loan servicer, document that all of Kelly's monthly payments were applied entirely to interest, with zero dollars applied to principal reduction.

73.    As of March 19, 2025, Kelly's loan payment history shows a pattern of $150 monthly payments with "Applied to Principal: $0.00" and "Interest: $150.00."

74.    The loan payment structure resulted in Kelly paying approximately $1,800 in payments (12 months × $150) while his loan balance increased by $12,460 due to accruing interest.

75.    On December 11, 2024, Kelly sent a written email requesting information about his remaining loan balance from Kilo Charlie.

76.    Kilo Charlie did not respond to Kelly's December 11, 2024 inquiry.

9

77.    On January 22, 2025, Ashleigh Koenig of Kilo Charlie finally disclosed in writing that $8,544.50 remained in Kelly's account.

78.    On January 29, 2025, Kelly sent a written request to Kilo Charlie for a full refund of the remaining balance – approximately $8,000.00.

79.    Kilo Charlie denied Kelly's refund request.

### *Pattern Evidence from Other Students*

80.    Online reviews posted by other Kilo Charlie students during Kelly's enrollment period document similar experiences with timeline misrepresentations and training failures.

81.    A written online review dated August 6, 2024, states: "I was sold on many promises ... 'You'll get through the program in 8 months!' ... Yeah none of that existed at the time once I started."

82.    The same August 6, 2024 review states: "The biggest selling point they keep pushing forward 'You could get done in 8 months!!!' NO YOU ARE NOT."

83.    The August 6, 2024 review further documents: "Most private students I've talked to have been around for 4-8 months, some a year, without getting through the first certificate."

84.    A second written online review dated October 10, 2024, states: "I was told I would complete my hours in 8 months, but it dragged on for well over a year with students being held accountable for loans to pay and a lack of certificates to show for it."

85.    Written communications between Kelly and other students document that students from Kelly's timeframe were asked to pay additional amounts of $7,000 to $10,000 to complete programs that were supposed to be fully funded by their original loan agreements.

86.     Text messages dated May 18, 2024, between Kelly and a Kilo Charlie instructor reference the school's checkride queue, with the instructor stating that another student named Gabe "has been waiting since January."

87.     The May 18, 2024 text messages further state that approximately 40 students were in the checkride queue at that time.

88.     These written communications from other students establish a pattern of systematic timeline misrepresentations and training failures by Kilo Charlie, not isolated incidents.

### *Advertising Evolution - Objective Proof of Knowing Falsehood*

89.     During the period when Kelly enrolled in March 2023, Kilo Charlie's written marketing materials prominently advertised completion timelines of "5.5 months," "6 months," and "7 months."

90.     Text messages dated May 18, 2024, document that Kilo Charlie management was "asking the stage check Instructors if they should start advertising it as a 12 month program."

91.     Kelly's written email dated July 30, 2024, documents that the school had "recently changed advertising to 10 months."

92.     By 2026, following Kilo Charlie's merger with US Aviation Academy, the same professional pilot program is advertised on the school's website as requiring "2 years full-time" or "24 months" for completion.

93.     Current marketing materials from US Aviation Academy (the merged entity) state the program duration as "less than 2 years."

94.     This represents a 400% increase from the original "5.5 months" timeline to the current "24 months" timeline for the identical program.

11

95. The dramatic evolution in advertised timelines—from 5.5-7 months in 2023, to 10-12 months in 2024, to 24 months in 2026—constitutes objective documentary evidence that Kilo Charlie's original timeline representations were knowingly false when made to Kelly.

96. Kilo Charlie's subsequent increase of advertised timelines to 24 months is a tacit admission that the 2023 timeline representations of 5.5-7 months were never credible or achievable.

*Pre-Suit Compliance and Demand Efforts*

97. Throughout 2024, Kelly made multiple written requests to Kilo Charlie for information regarding his loan balance, program status, and financial transparency.

98. On April 22, 2024, Kelly sent a written email to Chris Distin at Kilo Charlie requesting information about his current loan balance.

99. On April 27, 2024, Kelly sent a follow-up written email to Chris Distin offering to schedule a phone call to discuss the loan balance information.

100. Kelly received no response to his April 2024 written requests for information.

101. On April 29, 2024, Kelly sent a written email to Arthur Koenig requesting to postpone loan payments due to lack of training progress.

102. On May 7, 2024, Kelly sent a written email to Greg Laudick asking whether Kilo Charlie maintained a student portal with access to balance and paperwork information.

103. On May 7, 2024, Kelly sent a written email to Robert Renfro requesting a meeting to discuss his career program status.

104. On June 15, 2024, Kelly sent a comprehensive written email to Arthur Koenig detailing the timeline of training delays, requesting written confirmation of the school's

12

agreement to compensate him for living expenses, and seeking transparency regarding his remaining loan balance.

105. On July 1, 2024, Kelly sent a follow-up written email to Arthur Koenig requesting an answer regarding his financial standing in the program.

106. On July 30, 2024, Kelly sent another written email to Arthur Koenig requesting a written agreement regarding his enrollment status and the school's commitments moving forward.

107. On December 11, 2024, Kelly sent a written inquiry to Kilo Charlie requesting information about his remaining loan balance.

108. Kilo Charlie did not respond until January 22, 2025, when Ashleigh Koenig disclosed in writing that $8,544.50 remained in Kelly's account.

109. On January 29, 2025, Kelly sent a written request to Kilo Charlie for a full refund of his tuition payments based on the school's failures to provide adequate training services.

110. Kilo Charlie denied Kelly's January 29, 2025 refund request. At the time, Kelly was actively pursuing training with another school but did not have sufficient funds.

111. On February 17, 2025, Kelly sent a *Nelson v. Miller* letter to Kilo Charlie in an attempt to resolve this matter prior to initiating litigation. Kilo Charlie did not respond.

112. In September of 2025, Kelly, through legal counsel, sent a formal written demand letter to Kilo Charlie pursuant to Kansas law, including compliance with the pre-suit demand requirements under *Nelson v. Miller* for Kansas Consumer Protection Act claims.

117. Kelly also sent preservation letters to each Defendant.

118. Despite multiple written demands and preservation notices, neither Kilo Charlie nor Meritize provided meaningful responses or attempted to resolve Kelly's legitimate claims.

### *Meritize's Knowledge and Inaction*

123.    Throughout Kelly's enrollment period, Meritize received communications from Kelly regarding the training failures and delays at Kilo Charlie.

124.    On August 12, 2024, Kelly's dispute was escalated within Meritize, which relayed the matter to Kilo Charlie.

125.    In a written email dated August 12, 2024, a Meritize representative informed Kelly: "Kilo Charlie Aviation has confirmed with Meritize there is no refunds due. Additionally, Kilo Charlie Aviation has verified with Meritize that they have worked with you during uncontrollable weather delays and DPE shortages."

126.    Despite Kelly's written documentation of specific training failures, safety violations, and extended delays, Meritize continued to accept Kilo Charlie's representations that the school was providing satisfactory training services.

127.    Meritize continued to collect monthly payments and interest on Kelly's loan despite having knowledge of Kilo Charlie's documented failures to complete Kelly's training within the contracted 12-month enrollment period.

128.    Meritize's loan payment structure, which applied Kelly's entire monthly payment to interest with no principal reduction, resulted in Kelly's loan balance increasing while he remained unable to complete his training and begin working as a flight instructor.

### *Damages Suffered by Kelly*

129.    As a direct result of Defendants' conduct, Kelly has suffered substantial financial damages.

130.    Kelly has paid tuition in the amount of $78,955.50 to Kilo Charlie for training services that have not been adequately or timely provided.

14

131.    Kelly's loan balance has increased from $87,500 to $99,960 despite making monthly payments, resulting in additional interest charges of $12,460.

132.    Kelly has been forced to obtain full-time employment to manage his financial obligations rather than pursuing his planned aviation career, resulting in lost opportunity costs exceeding 24 months.

133.    Kelly has incurred additional costs due to Defendants' failures, including time, effort, and expenses associated with attempting to resolve the matter.

134.    Kelly has suffered significant emotional distress as a result of Defendants' deceptive practices and failures, including anxiety about his financial future, stress regarding his mounting debt, frustration with the lack of progress toward his career goals, and disappointment that his career aspirations have been thwarted by Defendants' misconduct.

135.    Kelly's emotional distress has been compounded by the realization that he was deceived through false marketing representations, that his training funds were mismanaged, and that he now faces substantial debt without the certifications necessary to begin his aviation career.

136.    Kelly continues to experience ongoing financial harm as his loan balance grows and his career remains stalled, with no clear path to completion of his training or resolution of his substantial debt burden.

### TOLLING OF THE STATUTE OF LIMITATIONS

#### *Kilo Charlie's Fraudulent Concealment Through False Advertising Evolution*

137.    Kilo Charlie actively concealed from Kelly the true nature of its program completion timelines through a systematic pattern of false advertising that evolved over time.

138.    In March 2023, when Kelly enrolled, Kilo Charlie's written marketing materials prominently featured completion timelines of "5.5 months," "6 months," and "7 months."

139.    The written training contract executed on March 20, 2023, established a projected graduation date of April 7, 2024, representing a 12-month timeline.

140.    By June 2024, Kelly's written email documented that his graduation date had been pushed back to August 2024, extending the timeline to 16 months.

141.    By July 2024, Kelly's written email stated he was on "month 17 of a program they have advertised as low as 5.5 months which they recently changed advertising to 10 months."

142.    By 2026, the same school—now operating as US Aviation Academy following the merger—advertises the identical program as requiring "2 years full-time" or "24 months" for completion.

143.    This 400% increase in advertised timelines from 5.5 months to 24 months constitutes a tacit admission that Kilo Charlie knew the original timeline representations were false but continued enrolling students based on those false representations.

### *Meritize's Fraudulent Concealment*

144.    Meritize concealed material loan terms from Kelly by burying critical provisions in fine print within the loan agreement.

145.    The loan agreement stated Kelly must repay "even if such failure is caused by the School ceasing to provide education services," but this provision was not conspicuously disclosed.

146.    Meritize failed to disclose that its loan payment structure would result in zero principal reduction, with all of Kelly's monthly payments applied solely to interest.

16

147.   Meritize accepted Kilo Charlie's enrollment verifications and representations about Kelly's "Satisfactory Academic Progress" without conducting independent monitoring or verification of the school's actual performance.

### *Discovery of Fraud*

148.   Kelly could not have discovered the fraud at an earlier date because Defendants controlled all information regarding actual program completion rates and timelines.

149.   Kelly's written email dated June 15, 2024, documents: "When 12 months passed, the school did not inform me of the option to extend loan payments or the reasons behind the delays. I had to speak with other students in order to get this information."

150.   Information about other students experiencing similar timeline failures and deceptive practices only emerged over time through online reviews and direct communications with fellow students.

### *Kansas Law - Fraudulent Concealment Doctrine*

152.   Under Kansas law, the statute of limitations is tolled during the period of active fraudulent concealment. *Murray v. Miracorp, Inc.*, 318 Kan. 615, 545 P.3d 1009 (2024) ("Fraud and fraudulent concealment can toll a statute of limitations" if the "'concealment [is] fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there [is] something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.'").

153.   The statute of limitations does not begin to run until the plaintiff discovers, or through reasonable diligence should have discovered, the fraud. K.S.A. 60-513(a)(3). *See also*, *Bonin v. Vannaman*, 929 P.2d 754, 762 (Kan. 1996).

154.    Kelly's claims are timely filed because the statute of limitations was tolled during the period Defendants actively concealed their fraudulent conduct through false advertising, buried loan provisions, and systematic misrepresentations to both Kelly and the lender.

155.    Kelly exercised reasonable diligence in attempting to discover the fraud by making multiple written requests for information, yet Defendants continued to conceal material facts about completion rates, loan balances, and the school's operational failures.

**COUNT I:**
**Violations of the Kansas Consumer Protection Act Against Kilo Charlie**

156.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

157.    The Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.*, prohibits deceptive and unconscionable acts and practices in connection with consumer transactions in Kansas.

158.    The KCPA should be liberally construed to promote its policies of protecting consumers against suppliers that commit deceptive and unconscionable acts and/or practices. K.S.A. § 50-623.

159.    Kelly is a "consumer" as defined by K.S.A. § 50-624(b).

160.    Specifically, Kelly purchased Kilo Charlie's professional pilot training services for personal, family, household, business, and/or agricultural purposes in that the certifications and training obtained through Kilo Charlie would allow Kelly to seek employment opportunities in the aviation industry.

161.    Kilo Charlie is a "supplier" as defined by K.S.A. § 50-624(l).

162.    Specifically, Kilo Charlie is a flight training school which, in the ordinary course of business, solicits consumer transactions from students and frequently deals directly with the student's finance company.

163.    The purchase of Kilo Charlie's professional pilot training program was a "consumer transaction" as defined by K.S.A. § 50-624(c).

164.    Specifically, the purchase of the training program was the sale of services which occurred within the state of Kansas to a consumer—Kelly.

165.    Kelly has been damaged and is "aggrieved" pursuant to the KCPA as a result of Kilo Charlie's conduct.

166.    Kilo Charlie's violations of K.S.A. § 50-626, Deceptive Acts and Practices, include, but are not limited to, the following:

    a. Falsely representing the actualities of the professional pilot program completion timeline to Kelly, in violation of K.S.A. § 50-626(a). Kilo Charlie's written marketing materials from 2023 represented completion timelines of "as little as 5.5 months," "as little as 6 months," and "under 7 months," when by 2026 the identical program is advertised as requiring "2 years full-time" or "24 months"—a 400% increase that proves the 2023 representations were false;

    b. Falsely informing Kelly of the program's completion likelihood, as well as other material misrepresentations, in violation of K.S.A. § 50-626(b)(1). The written contract established a projected graduation date of April 7, 2024 (12 months), yet Kelly's June 2024 email documents the graduation date was pushed to August 2024 (16 months), and his July 2024 email states he was on "month 17 of a program they have advertised as low as 5.5 months";

    c. Misrepresenting the program's characteristics, including but not limited to the program duration and training delivery, in violation of K.S.A. § 50-626(b)(2). Kilo Charlie represented that students could "Train up to 35% faster than any other flight school," yet the reality included documented 22-day and 68-day training gaps with no instruction provided;

    d. The willful failure to disclose material facts about the majority of students' inability to complete the program in the advertised timeframe, in violation of K.S.A. § 50-626(b)(3). Kelly's June 15, 2024 email documents: "I had to speak with other students in order to get this information." Written online reviews from

19

other students during Kelly's enrollment period confirm the pattern of timeline failures, with students stating they were told "8 months" but training "dragged on for well over a year";

e.  Enticing Kelly into the program through material falsehoods about completion timelines that led him to enroll with Kilo Charlie as opposed to any other flight training school, in violation of K.S.A. § 50-626(b)(4);

f.  Willfully failing to disclose the school's inadequate resources to complete training in the advertised timeframe, in violation of K.S.A. § 50-626(b)(6). Kelly's emails document extensive delays waiting for instructors and checkrides, text messages dated May 18, 2024, show "bosses were asking the stage check Instructors if they should start advertising it as a 12 month program," and written communications document that other students from Kelly's timeframe were asked to pay additional amounts of $7,000 to $10,000 to complete their training; and

g.  Falsely stating the reasons for program delays and inability to complete training, in violation of K.S.A. § 50-626(b)(10).

167.  Kilo Charlie's violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include, but are not limited to, the following:

a.  Engaging in unconscionable conduct in the course of a consumer transaction by systematically misrepresenting material facts about program completion timelines, in violation of K.S.A. § 50-627(a);

b.  Charging Kelly tuition for a program represented to be completable in 5.5 to 12 months when Kilo Charlie knew or had reason to know the vast majority of students could not complete the program in those timeframes, in violation of K.S.A. § 50-627(b)(2);

c.  Taking advantage of Kelly's inability to reasonably protect his interests because of his lack of knowledge regarding actual program completion rates and the school's operational failures, in violation of K.S.A. § 50-627(b)(5); and

d.  Misrepresenting the facts and actualities of the training program to Kelly, therefore altering the material facts upon which he relied, in violation of K.S.A. § 50-627(b)(6).

168.  Specifically, Kilo Charlie entered into a written training contract with Kelly on March 20, 2023, with a projected graduation date of April 7, 2024, based upon representations

20

that the program could be completed in as little as 5.5 to 7 months, when in fact Kilo Charlie knew or should have known these timelines were not achievable.

169. Further, the 400% increase in Kilo Charlie's advertised timeline—from 5.5 months in 2023 to 24 months in 2026 for the identical program—constitutes objective documentary evidence that Kilo Charlie's original timeline representations were knowingly false when made to Kelly.

170. Kilo Charlie's subsequent change in advertising to reflect 24-month completion timelines is a tacit admission that the program was never operationally credible at the 5.5 to 7-month timeframes used to induce Kelly's enrollment.

171. Kilo Charlie's conduct directly and proximately caused Kelly's damages.

172. Kilo Charlie's representations and misrepresentations were made with the intent that prospective students like Kelly would rely on the unfair and deceptive practices in deciding to enroll in the program.

173. Kilo Charlie did not disclose the lack of instructors, equipment limitations, checkride availability issues, or actual completion rates to Kelly prior to enrollment, thereby leaving him to discover the false pretenses only after enrolling and financing his training.

174. Kilo Charlie's prohibited practices are directly related to material facts as contemplated in K.S.A. § 50-626, as the representations regarding completion timelines were material misrepresentations which are likely to affect a consumer's conduct or decision with regard to enrolling in and financing flight training.

175. Kelly sustained ascertainable losses due to his enrollment at Kilo Charlie based on false timeline representations.

176.   Kelly is entitled to recover the greater of his actual damages or statutory civil penalties in the amount of up to $10,000.00 for each violation as provided by K.S.A. §§ 50-634(b), 50-636, and 50-637.

178.   Kelly's actual damages include: (a) tuition payments for inadequate and incomplete services in the amount of $87,500.00; (b) loan interest accrued due to Kilo Charlie's program delays in the amount of approximately $17,668.87; (c) opportunity cost and lost wages due to the 24-month delay in career advancement; (d) additional costs due to program failures including travel expenses for improperly scheduled checkrides, additional examiner fees, and costs associated with addressing safety violations in the amount of $3,500.00; and (e) emotional distress damages including anxiety about his financial future, stress regarding his mounting debt with no career advancement, and disappointment that his career aspirations have been thwarted by Kilo Charlie's deceptive practices.

179.   Given the egregious nature of Kilo Charlie's deceptive marketing practices and the substantial harm to Kelly, including safety violations that put Kelly's FAA certifications and aviation career at risk, the maximum statutory damages are warranted.

180.   Kelly is also entitled to recover his reasonable attorneys' fees and costs pursuant to K.S.A. § 50-634(e).

WHEREFORE, Kelly prays for judgment against Kilo Charlie in an amount to be determined at trial, for the greater of his actual damages or civil penalties of up to $10,000.00 per violation, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, for his costs and reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

**COUNT II:**
**Violations of the Kansas Consumer Protection Act Against Meritize**

181. Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

182. Meritize is a "supplier" as defined by K.S.A. § 50-624(l) because it regularly engages in consumer financing transactions in the ordinary course of business, providing education loans to consumers for flight training and other educational programs.

183. Meritize's provision of the $87,500 education loan to Kelly was part of the consumer transaction for professional pilot training services and constitutes a consumer transaction subject to the KCPA.

184. Meritize violated K.S.A. § 50-626(b)(3) and § 50-627 by failing to conspicuously disclose material terms about Kelly's payment obligations when the educational program failed to perform.

185. The written loan agreement buried a provision stating Kelly must repay "even if such failure is caused by the School ceasing to provide education services," concealing this material term from Kelly until after enrollment and financing were completed.

186. This provision requiring repayment regardless of school performance should have been prominently disclosed, as it materially affects a consumer's decision to obtain financing and shifts substantial risk to the borrower without adequate disclosure.

187. Meritize's failure to conspicuously disclose this material term constitutes a deceptive practice under K.S.A. § 50-626(b)(3).

188. Meritize violated K.S.A. § 50-626(b)(1) and § 50-627 by structuring the loan payment terms in a manner that caused Kelly's debt to increase despite making monthly payments.

23

189.    Kelly's loan balance increased from $87,500 to approximately $99,960 by March 2025 despite making consistent monthly payments of $150 beginning April 19, 2024.

190.    Payment records from MOHELA, Meritize's servicer, document that all of Kelly's monthly payments were applied entirely to interest, with zero dollars applied to principal reduction.

191.    This loan payment structure was not adequately disclosed to Kelly and was designed to the borrower's detriment, causing Kelly's debt to grow while he remained unable to complete his training and begin earning income as a flight instructor.

192.    Meritize violated K.S.A. § 50-626(b)(3) and § 50-627 by failing to adequately monitor Kilo Charlie's performance and continuing collections despite documented evidence of school failures.

193.    Meritize accepted Kilo Charlie's enrollment verifications and representations about Kelly's "Satisfactory Academic Progress" without conducting independent verification of the school's actual performance.

194.    Kelly's written emails dated June 15, 2024, and July 30, 2024, documented that he was on month 16 and month 17 of a program promised in 5.5 to 12 months, yet Meritize continued to accept the school's representations and collect payments.

195.    Despite receiving Kelly's written complaint on August 12, 2024, detailing specific training failures and safety violations, Meritize relied solely on Kilo Charlie's response and continued collections without independent investigation.

196.    Meritize's conduct constitutes unconscionable acts and practices under K.S.A. § 50-627 by continuing to collect payments and interest on a loan for educational services that were demonstrably not being provided.

24

197.    Meritize continued collections despite knowledge of Kilo Charlie's documented non-performance, including the school's failure to complete Kelly's training within the contracted 12-month enrollment period and the school's safety violations that put Kelly's aviation career at risk.

198.    Meritize's unconscionable practices include maintaining a loan payment structure that caused Kelly's debt to increase while the underlying educational program remained incomplete, thereby taking unfair advantage of Kelly's financial vulnerability.

199.    Meritize's violations of K.S.A. § 50-626, Deceptive Acts and Practices, include falsely representing or failing to disclose material information about loan obligations, in violation of K.S.A. § 50-626(b)(1), and willfully failing to disclose material facts about the loan structure and school performance monitoring, in violation of K.S.A. § 50-626(b)(3).

200.    Meritize's violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include engaging in unconscionable conduct by continuing collections despite knowledge of school failures, in violation of K.S.A. § 50-627(a), and taking advantage of Kelly's inability to protect his interests due to lack of knowledge about the loan structure's impact on his debt, in violation of K.S.A. § 50-627(b)(5).

201.    Meritize knew or should have known that its loan payment structure would cause Kelly's debt to increase despite monthly payments, and that continuing collections while the school failed to perform would cause substantial financial harm to Kelly.

202.    Meritize's conduct directly and proximately caused Kelly's damages and constitutes deceptive and unconscionable practices under the KCPA.

203.    Kelly sustained ascertainable losses as a direct result of Meritize's deceptive and unconscionable practices.

204.    Kelly's ascertainable losses include interest charges of $12,460.00 to $14,420.79 accrued due to program delays, loan balance increases from $87,500 to $99,960 despite making monthly payments, and payments made on a loan for educational services that were not properly delivered.

205.    Kelly has been forced to continue making monthly payments on a loan for incomplete educational services, resulting in ongoing financial harm as his debt increases while his career advancement remains stalled.

206.    Kelly has suffered emotional distress as a result of Meritize's practices, including anxiety about his growing debt burden, stress regarding his inability to reduce the loan principal despite making payments, and frustration with Meritize's failure to provide adequate remedies when the underlying educational program failed.

207.    Kelly is entitled to recover the greater of his actual damages or statutory civil penalties in the amount of up to $10,000.00 for each violation as provided by K.S.A. §§ 50-634(b), 50-636, and 50-637.

208.    Kelly is also entitled to recover his reasonable attorneys' fees and costs pursuant to K.S.A. § 50-634(e).

209.    Given the nature of Meritize's deceptive loan structure and unconscionable collection practices that caused Kelly's debt to increase while educational services remained undelivered, statutory penalties and attorneys' fees are warranted.

WHEREFORE, Kelly prays for judgment against Meritize in an amount to be determined at trial, for the greater of his actual damages or civil penalties of up to $10,000.00 per violation, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, for his

costs and reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

## COUNT III:
### Negligence Against Kilo Charlie

210.   Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

211.   As a professional flight training institution, Kilo Charlie owed Kelly a heightened duty of care given that errors in flight training risk both life and career.

212.   Kilo Charlie owed Kelly a duty to provide competent instruction, maintain safe training conditions, ensure FAA regulatory compliance, assign qualified instructors, and deliver training services in a timely and professional manner.

213.   Kilo Charlie breached its duty to Kelly through the following documented safety and training failures:

   a.   On May 18, 2024, Kilo Charlie sent Kelly to Iowa for a commercial check ride at the wrong scheduled time, failed to pay the required examiner fee, and scheduled Kelly when he was not eligible for the check ride due to insufficient logged flight time, as documented;

   b.   On August 28, 2024, Kilo Charlie attempted to schedule Kelly for a CFI check ride using aircraft N51WE, which had pilot operating handbook weight and balance limitations that made the aircraft inappropriate for demonstrating the maneuvers required for the commercial pilot check ride, as documented in written communications;

   c.   On October 12, 2024, Kilo Charlie assigned Kelly an instructor who lacked the FAA-required two years of CFI experience necessary to provide CFI training, as documented in text messages dated October 12, 2024, between Kelly and instructor Collin, which stated: "per the regs only a cfi with 2 years experience can do your training";

   d.   Kilo Charlie imposed a 22-day training gap from July 30 to August 21, 2023, during which no instrument training was provided, as documented in Kelly's June 15, 2024 written email to Arthur Koenig;

27

e.  Kilo Charlie imposed a 68-day training gap from March 26 to June 2, 2024, during which no Commercial to CFI training was provided, as documented in Kelly's June 15, 2024 written email to Arthur Koenig; and

f.  Kilo Charlie exhibited a pattern of safety violations and training deficiencies documented through multiple text messages and emails showing systematic failures to provide adequate instructor oversight, proper training progression, and regulatory compliance.

214.  Kilo Charlie's breaches of duty directly and proximately caused Kelly's damages by extending his training time from the promised 5.5 to 7 months to over 2 years, resulting in additional costs, ongoing loan obligations, safety risks to his FAA certifications, and jeopardy to his aviation career.

215.  As a direct and proximate result of Kilo Charlie's negligence, Kelly suffered actual damages including: (a) tuition payments of $78,955.50 for training services that were not properly delivered due to safety violations and training deficiencies; (b) loan interest charges of $12,460.00 to $14,420.79 accrued due to training delays; (c) opportunity costs and lost wages due to the 24-month delay in career advancement; (d) additional costs of approximately $3,500.00 due to Kilo Charlie's failures; and (e) emotional distress from safety concerns, anxiety about his aviation career being jeopardized by Kilo Charlie's encouragement to violate FAA regulations, and stress from being assigned unqualified instructors and inappropriate aircraft.

216.  Kilo Charlie's conduct was willful, wanton, reckless, and demonstrated conscious disregard for Kelly's safety and career, entitling Kelly to punitive damages.

WHEREFORE, Kelly prays for judgment against Kilo Charlie in an amount to be determined at trial, for his actual damages, punitive damages given the willful and reckless nature of Kilo Charlie's conduct, pre- and post-judgment interest at the greatest rate allowed by

statute, for his costs and reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

## COUNT IV:
### Breach of Contract Against Kilo Charlie

217. Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

218. On March 20, 2023, Kelly and Kilo Charlie entered into a valid and enforceable written training contract for professional pilot training services.

219. The written contract, signed April 6, 2023, established a projected graduation date of April 7, 2024.

220. The total program cost was $85,000, or $87,500 with origination fees.

221. Under the contract, Kilo Charlie was obligated to provide competent flight instruction within the projected 12-month timeframe.

222. Kilo Charlie was obligated to provide adequate scheduling and resources to complete Kelly's training.

223. Kilo Charlie was obligated to complete Kelly's training for the stated tuition amount without requiring additional payments.

224. Kilo Charlie was obligated to maintain a safe training environment compliant with FAA regulations.

225. Kilo Charlie was obligated to assign qualified instructors possessing required FAA certifications.

226. Kilo Charlie materially breached the contract by failing to complete Kelly's training within the contracted 12-month timeframe, with Kelly's training remaining incomplete nearly three years after enrollment.

29

227.    Kilo Charlie materially breached the contract by imposing unexplained training gaps of 22 days (July 30 to August 21, 2023) and 68 days (March 26 to June 2, 2024), as documented in Kelly's written emails.

228.    Kilo Charlie materially breached the contract through the May 18, 2024 Iowa checkride incident, sending Kelly to a checkride with the wrong scheduled time, no examiner fee paid, and Kelly ineligible due to insufficient logged time, as documented in written communications.

229.    Kilo Charlie materially breached the contract by assigning Kelly an unqualified instructor on October 12, 2024, who lacked the required two years of CFI experience, as documented in text messages.

230.    Kilo Charlie materially breached the contract through safety violations, including encouraging falsification of logbook entries, a federal aviation violation, as documented in text messages dated May 18, 2024.

231.    Kilo Charlie materially breached the contract by failing to provide adequate resources causing systematic delays, as documented in Kelly's written emails and text messages with instructors.

232.    As a direct and proximate result of Kilo Charlie's material breaches, Kelly suffered damages including tuition payments for incomplete services in the amount of $78,955.50.

233.    Kelly suffered additional damages including lost opportunity costs due to the 24-month delay in career advancement and ongoing loan obligations while training remained incomplete.

234.    Kilo Charlie's breaches were willful, wanton, and demonstrated conscious disregard for Kelly's contractual rights, entitling Kelly to punitive damages.

WHEREFORE, Kelly prays for judgment against Kilo Charlie in an amount to be determined at trial, for his actual damages, consequential damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, for his costs and reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

### COUNT V:
### Breach of Contract Against Meritize

235.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

236.    On March 17, 2023, Kelly and Meritize entered into a valid and enforceable written loan agreement titled "H-22 Private Education Loan."

237.    The loan agreement, account number 1863896579, provided for a total loan amount of $87,500.

238.    The loan application, completed by Kilo Charlie personnel, listed Kelly's "Expected Completion Date" as "04/07/2024."

239.    The written loan agreement defined the "Enrollment Period" as "not to exceed Twelve (12) months" from the date of disbursement.

240.    Under the loan agreement, Meritize was obligated to monitor the adequacy of the educational program being financed.

241.    Meritize was obligated to provide adequate remedies when the underlying educational program failed to meet contractual obligations.

31

242. Meritize was obligated to structure loan payments in a manner that allowed for principal reduction.

243. Meritize materially breached the contract by continuing to collect payments despite documented evidence of Kilo Charlie's non-performance, as shown in payment records reflecting collections while Kelly documented ongoing enrollment and incomplete training in written emails dated June 15, 2024, and July 30, 2024.

244. Meritize materially breached the contract by failing to provide adequate remedies when Kelly documented program failures in his August 12, 2024 written complaint to Meritize.

245. Meritize materially breached the contract by structuring loan payments resulting in zero principal reduction despite Kelly's consistent monthly payments, as documented in payment records showing all payments applied solely to interest.

246. Meritize materially breached the contract by failing to monitor Kilo Charlie's compliance with enrollment timeline representations, accepting the school's claim of "Satisfactory Academic Progress" while Kelly documented being on "month 17" of training.

247. Meritize breached the implied covenant of good faith and fair dealing by continuing to enforce the loan while Kilo Charlie materially breached the training contract.

248. As a direct and proximate result of Meritize's material breaches, Kelly suffered damages including payments on a loan for educational services that were not properly delivered.

249. Kelly's loan balance increased from $87,500 to $99,960 by March 2025 despite making consistent monthly payments.

250. Kelly suffered interest charges of $12,460.00 to $14,420.79 and financial distress as a result of Meritize's breaches.

WHEREFORE, Kelly prays for judgment against Meritize in an amount to be determined at trial, for his actual damages, consequential damages, pre- and post-judgment interest at the greatest rate allowed by statute, for his costs and reasonable attorneys' fees if provided in the contract, and for such other and further relief as may be just and proper under the circumstances.

## COUNT VI:
### Negligence Against Meritize

251. Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

252. As an educational lender providing financing specifically tied to Kelly's enrollment in Kilo Charlie's professional pilot training program, Meritize owed Kelly a duty of care.

253. Meritize's duty of care included the duty to monitor school performance given the specific loan-to-school relationship documented in the written loan application completed by Kilo Charlie personnel.

254. Meritize owed Kelly heightened responsibilities given the loan was tied to a specific 12-month enrollment timeline, as documented in the loan agreement defining the "Enrollment Period" as "not to exceed Twelve (12) months" and the loan application listing "Expected Completion Date: 04/07/2024."

255. Meritize owed Kelly a duty to provide adequate remedies when the school failed to perform its obligations under the training contract.

256. Meritize owed Kelly a duty to structure the loan fairly and apply payments properly to allow for principal reduction.

257. Meritize negligently breached its duty of care through the following conduct based on documentary evidence:

33

a. Failing to verify Kilo Charlie's advertised completion rates before approving the loan, despite the loan application showing an April 2024 completion date while the school had a documented pattern of timeline failures reflected in online reviews posted during Kelly's enrollment period;

b. Accepting Kilo Charlie's enrollment verifications without independent monitoring despite Kelly's written complaints to Meritize documenting specific training failures and delays;

c. Requiring payments while Kelly documented in his written emails dated June 15, 2024, and July 30, 2024, that he was still enrolled with an incomplete program, stating he was on "month 16" and "month 17" of training;

d. Failing to provide forbearance or deferment options when Kelly raised documented issues in his written complaint to Meritize on August 12, 2024; and

e. Structuring loan payments that caused zero principal reduction, as documented in payment records from MOHELA showing all of Kelly's monthly payments applied solely to interest with no principal reduction.

258. Meritize's negligent breaches directly and proximately caused Kelly's damages.

259. As a direct result of Meritize's negligence, Kelly's loan balance increased from $87,500 to $99,960 by March 2025 despite making consistent monthly payments.

260. Kelly suffered interest accrual of $12,460.00 to $14,420.79 as a direct result of Meritize's negligence.

261. Kelly suffered financial harm from making payments on a loan for educational services that were documented as incomplete while Meritize continued collections during Kilo Charlie's documented program failures.

262.   Kelly suffered emotional distress including anxiety about his growing debt burden, stress regarding his inability to reduce loan principal despite making payments, and frustration with Meritize's failure to provide adequate remedies when he documented the school's failures in writing.

WHEREFORE, Kelly prays for judgment against Meritize in an amount to be determined at trial, for his actual damages, consequential damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## COUNT VII:
### Fraud Against Kilo Charlie

263.   Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

264.   Kilo Charlie made material false representations to Kelly regarding the completion timeline for its professional pilot training program.

265.   Kilo Charlie's written marketing materials from March 2023 represented that students could "Become a Commercial Pilot in as little as 5.5 months," "in as little as 6 months," and "in under 7 months."

266.   Kilo Charlie's written marketing materials further represented that students could "Train up to 35% faster than any other flight school."

267.   The written training contract executed on March 20, 2023, established a projected graduation date of April 7, 2024, representing a 12-month timeline.

268.   The loan application completed by Kilo Charlie personnel listed Kelly's "Expected Completion Date" as "04/07/2024."

269.   These representations were false when made.

270. Kilo Charlie knew these timeline representations were false, or made them with reckless disregard for their truth.

271. By 2026, Kilo Charlie—now operating as US Aviation Academy following the merger—advertises the identical program as requiring "2 years full-time" or "24 months" for completion.

272. This 400% increase in advertised timelines from 5.5 months to 24 months constitutes objective documentary proof that the 2023 timeline representations were known to be false when made to Kelly.

273. Text messages dated May 18, 2024, document that school management was "asking the stage check Instructors if they should start advertising it as a 12 month program."

274. Kelly's written email dated July 30, 2024, documents the school had "recently changed advertising to 10 months."

275. The progression of advertising changes—from 5.5-7 months in 2023, to 10-12 months in 2024, to 24 months in 2026—proves knowing falsehood, not mere optimism or miscalculation.

276. Kilo Charlie's subsequent increase in advertised timelines is a tacit admission that the 2023 representations were never credible or achievable.

277. Kilo Charlie made these false representations with the intent to induce Kelly to enroll in its program and obtain financing.

278. The timeline representations were prominently featured in all of Kilo Charlie's marketing materials, including website content, social media posts, and promotional materials.

279. Kelly's written email dated June 15, 2024, documents that he relied on these timeline representations in his financial planning and enrollment decision.

36

280. The completion timeline was a material fact that would affect a reasonable consumer's decision to enroll in and finance $87,500 in flight training.

281. Kelly reasonably relied on Kilo Charlie's timeline representations in deciding to enroll and obtain financing.

282. These were specific numerical claims—not vague puffery—that were reinforced in the written contract with a specific projected graduation date of April 7, 2024.

283. The loan application completed by Kilo Charlie listing the same April 7, 2024 expected completion date further reinforced the reasonableness of Kelly's reliance.

284. Kelly could not have discovered the falsity of these representations through reasonable diligence before enrollment, as Kilo Charlie controlled all information about actual completion rates.

285. As a direct and proximate result of Kelly's reasonable reliance on Kilo Charlie's false representations, Kelly suffered all damages described in Counts III and IV.

286. Kilo Charlie's conduct was intentional, willful, wanton, fraudulent, and demonstrated knowing and reckless disregard for the truth, entitling Kelly to punitive damages.

WHEREFORE, Kelly prays for judgment against Kilo Charlie in an amount to be determined at trial, for his actual damages, punitive damages given the knowing and intentional nature of Kilo Charlie's fraudulent conduct, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## COUNT VIII:
### FTC Holder Rule Violations Against Meritize (16 C.F.R. § 433)

287. Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

37

288.	Kelly is a "consumer" pursuant to 16 C.F.R. § 433.1(b).

289.	Meritize is a "creditor" pursuant to 16 C.F.R. § 433.1(c).

290.	On March 17, 2023, Kelly and Meritize entered into a "consumer credit contract" pursuant to 16 C.F.R. § 433.1(i), titled "H-22 Private Education Loan," account number 1863896579, in the principal amount of $87,500.

291.	In accordance with the requirements of the Federal Trade Commission's Rule on Preservation of Consumer Claims and Defenses, 16 C.F.R. § 433, commonly known as the FTC Holder Rule, the written loan agreement contains the following notice on page 9:

> "**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER**."

292.	Kilo Charlie sold its professional pilot training program to Kelly.

293.	Kelly obtained Kilo Charlie's training program with proceeds from the Meritize loan pursuant to the written loan agreement.

294.	Meritize disbursed approximately $78,955.50 directly to Kilo Charlie on March 24, 2023, for Kelly's flight training services.

295.	By virtue of the FTC Holder notice contained in the loan agreement, Meritize is subject to all claims and defenses that Kelly could assert against Kilo Charlie.

296.	Kelly hereby asserts against Meritize all claims and defenses he has against Kilo Charlie as set forth in Counts I, III, IV, and VII of this Complaint.

297.	The FTC Holder Rule imposes vicarious liability upon Meritize for all violations committed by Kilo Charlie.

298. This vicarious liability includes all of Kilo Charlie's violations of the Kansas Consumer Protection Act, breaches of contract, negligence, and fraud as detailed in the foregoing counts.

299. Because Kelly is entitled to damages against Kilo Charlie, he likewise requests all such relief against Meritize.

300. The FTC Holder Rule provides that recovery by Kelly shall not exceed amounts paid by Kelly under the loan agreement.

301. However, attorneys' fees are not subject to the vicarious liability cap imposed by the FTC Holder Rule.

302. Kelly has made payments totaling approximately $1,800 on the loan, and Meritize disbursed $78,955.50 to Kilo Charlie, establishing the scope of Meritize's vicarious liability.

WHEREFORE, Kelly prays for joint-and-several judgment—as to each and every claim for which Kelly establishes liability against Kilo Charlie—against Meritize in such sum as is equal to any amounts Kelly has paid under the loan agreement or amounts disbursed to Kilo Charlie, reasonable attorneys' fees not subject to the cap, litigation costs, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

**COUNT IX:**
**VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST KILO CHARLIE AND MERITIZE**

303. Kelly incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

304. The elements of a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") are outlined in 18 U.S.C. §§ 1961-1962

39

305. The statute outlines specific unlawful activities, such as using or investing income derived from racketeering, acquiring or maintaining an interest in an enterprise through racketeering, and conducting an enterprise's affairs through racketeering.

306. To successfully state a claim under RICO, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Tronsgard v. FBL Fin. Grp., Inc., 312 F. Supp. 3d 982* (D. Kan. 2018).

307. In this instance, Kilo Charlie's conduct, as described above, has led to a business model enticing individuals looking for a career in aviation with false advertisements and misrepresentations.

308. An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4).

309. Kilo Charlie and Meritize are engaged in an enterprise as they actively engage in business together for the enrollment of students at Kilo Charlie and funding of education with Meritize.

310. Racketeering, in this nature, can be defined as an act involving extortion. 18 U.S.C. § 1961(1)(A).

311. A "pattern of racketeering" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5).

312. In this instance, Kilo Charlie and Meritize are actively engaging in racketeering; Meritize finances a loan for enrollment of a flight student at Kilo Charlie, then disperses the funds to Kilo Charlie earlier than is projected pursuant to the disbursement schedule.

313. The funds are intended to be dispersed to Kilo Charlie upon completion of a phase by the student, though instead, Meritize releases large amounts of funds to Kilo Charlie when a student is represented as making "satisfactory academic progress".

314. Due to this coercive business model of providing misrepresentations and false advertisements to entice students in enrolling, Kilo Charlie and Meritize can have the student withdraw a loan for one year of schooling, then postpone graduation, and have the student remove the additional funds necessary to complete schooling all while Meritize begins collecting on the loan and applying the additional interest incurred.

315. Both Kilo Charlie and Meritize are therefore receiving more money from the students, and in this instance Kelly, in the end.

316. This exact racketeering scheme has been utilized on Kelly on at least one instance.

317. Upon information and belief, Kelly is not the only student believed to have been misled by Kilo Charlie's representations in terms of academic progress to lenders such as Meritize.

318. Due to this conduct and pattern of racketeering between enterprises, Kelly has been damaged.

WHEREFORE, Kelly prays for judgment against Kilo Charlie and Meritize, jointly and severally, for treble damages pursuant to 18 U.S.C. § 1964(c), reasonable attorneys' fees and costs, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

41

## DEMAND FOR JURY TRIAL

319. Plaintiff hereby demands a jury trial on all issues so triable.

320. Plaintiff designates Kansas City, Kansas as the place of trial.


**Dated: March 13, 2026**

Respectfully submitted,

*/s/ Bryce B. Bell*
Bryce B. Bell  KS#20866
**BELL LAW, LLC**
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
*Attorney for Plaintiff*