**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY**

| | |
|---|---|
| **TAYLOR KELLY,** | |
| Plaintiff, | |
| v. | **Case No. 2:26-cv-02145-JMK-JBW** |
| **KILO CHARLIE HOLDINGS, LLC,** and **MERITIZE LENDING, LLC,** | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MERITIZE
LENDING, LLC'S MOTION TO DISMISS PLAINTIFF TAYLOR KELLY'S FIRST
AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

Plaintiff Taylor Kelly ("Plaintiff" or "Mr. Kelly"), through counsel, hereby responds in opposition to Defendant Meritize Lending, LLC's ("Defendant" or "Meritize") Motion to Dismiss Plaintiff Taylor Kelly's First Amended Complaint and Memorandum in Support [ECF Nos. 16-17] (collectively, "Motion"),[1] respectfully stating as follows:

---

[1] Citations to the "Motion" will be to the supporting memorandum, ECF No. 17.

1

## I.    INTRODUCTION

This case centers upon a commercial-pilot training program run by Defendant Kilo Charlie Holdings, LLC ("Kilo Charlie").[2] Kilo Charlie advertised aggressive program-completion timelines—e.g., in as little as five and half months,[3] and "up to 35% faster than any other flight school"[4]—that it knowingly could not satisfy.[5] In Mr. Kelly's case, his expected program-completion date was April 7, 2024.[6] However, even though Plaintiff had completed all prerequisites for the critical commercial check-ride by March of 2024, Kilo Charlie offered Mr. Kelly no such training from March 26, 2024, through June 2, 2024.[7] That was in addition to a three-week gap in 2023 during which Kilo Charlie offered no instrument training.[8] Thereby, Plaintiff's expected program-completion date was pushed back to August 1, 2024.[9] Then, in late August 2024, Kilo Charlie scheduled a commercial check-ride for Mr. Kelly but did so using an airplane that was inadequate for that purpose.[10] Then, in October 2024, Kilo Charlie assigned Plaintiff an instructor "who lacked the FAA-required qualifications" needed to train him for the commercial check-ride.[11] Mr. Kelly repeatedly contacted Kilo Charlie regarding the program timeline and related financial issues, to little or no response.[12] As

---

[2] *See* First Amended Complaint [ECF No. 3]("FAC") at, *e.g.*, ¶¶ 3-4, 17-18, 49. The FAC contains two paragraphs numbered, respectively, 3 and 4 in error; this citation refers to the first paragraph 3 and 4.

[3] *See id.* at ¶ 16.

[4] *See id.* at ¶ 18.

[5] *See id.* at, *e.g.*, ¶¶ 3-4, 15-20, 47, 81-84, 88-96.

[6] *Id.* at ¶ 27.

[7] *See id.* at ¶¶ 43, 45.

[8] *See id.* at ¶ 36.

[9] *See id.* at ¶ 48.

[10] *See id.* at ¶ 58.

[11] *Id.* at ¶ 59.

[12] *See id.* at ¶¶ 49, 75-76, 100, 118.

of the filing date of this lawsuit—i.e., three years after he commenced the program—Plaintiff still hadn't completed it.[13] Kilo Charlie's conduct in this regard was part of a robust pattern and practice such that, as of May 2024, "approximately 40 students were in the check-ride queue at that time."[14] Notably, after Kilo Charlie merged with another training academy, it began advertising the program as requiring **two years** of full-time training for completion.[15]

The Kilo Charlie program was expensive: Mr. Kelly took out a student loan of $87,500 so that he could complete it in about a year.[16] That loan was originated by Meritize and carried a relatively high interest rate for a student loan.[17] Given that the entire purpose of the program was to qualify for employment as a commercial pilot or flight instructor, the program's duration was highly material to Plaintiff's decision to enroll at Kilo Charlie, and to finance that enrollment.[18] Partial completion of a pilot-certification program has little practical value. Kilo Charlie knew, or should have known, that it could not timely provide the training and check-rides needed to complete the program. As a result, students like Mr. Kelly incurred debt for training that never yielded the certifications they financed.

With specific respect to Meritize, it holds itself out as a lender that "enable[s] students to fund their skills-based careers with non-traditional lending methods."[19] Meritize conducts student-loan servicing through the Higher Education Loan Authority

---

[13] *See id.* at ¶ 50.
[14] *See id.* at ¶ 87.
[15] *See id.* at ¶ 92.
[16] *See id.* at ¶¶ 25, 27, 34.
[17] *See id.* at ¶¶ 24-26.
[18] *See id.* at, *e.g.*, ¶¶ 3-4, 14, 16, 19-20.
[19] *See* MERITIZE, https://www.meritize.com/ (last visited June 29, 2026).

of the State of Missouri and disbursed funds directly to Kilo Charlie.[20] Saliently, Mr. Kelly alleged that Defendant "received communications from [him] regarding the training failures and delays at Kilo Charlie" and that Meritize "escalated" his dispute.[21] However, Meritize affirmatively refused to help Mr. Kelly, claiming with Kilo Charlie that the delays to Plaintiff's training program were "uncontrollable" because of weather and a shortage of designated pilot examiners, and that no refund was due him.[22] Relatedly, via an unconscionable provision in the loan agreement, Meritize—which, again, sent funds directly to Kilo Charlie—claimed that Mr. Kelly still had to meet all loan terms *even if Kilo Charlie didn't provide services*.[23] Meritize seeks dismissal of all claims. On July 9 2026, Plaintiff dismissed his Breach of Contract claim without prejudice; otherwise, the Motion should be **DENIED**.

## II.    LEGAL STANDARD

A motion made pursuant to Fed. R. Civ. P. 12(b)(6) is a test of the complaint's sufficiency.[24] Thus, "in assessing whether a plaintiff has stated a claim for relief, a court must restrict its review to only the allegations within the four corners of the complaint," subject to a few exceptions.[25] The Court must accept Plaintiff's well-pleaded facts as true and view them in the light most favorable to Mr. Kelly.[26] Further, the Court must draw all reasonable inferences in Plaintiff's favor.[27]  To meet the federal plausibility standard,

---

[20] *Id.* at ¶¶ 9, 294.

[21] *See id.* at ¶¶ 123-24.

[22] *See id.* at ¶ 125.

[23] *See id.* at, *e.g.*, ¶¶ 3, 27, 29, 68, 126-27, 197; Motion, <u>Ex. A</u> at 7.

[24] *See, e.g., Morphew v. Chaffee Cnty., Colo.*, 172 F.4th 802, 813 (10th Cir. 2026).

[25] *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025)(internal quotation and citation omitted).

[26] *See, e.g., Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023).

[27] *See, e.g., Brown*, 124 F.4th at 1263.

"the complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28] According to the U.S. Court of Appeals for the Tenth Circuit, "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."[29]

## III.    ARGUMENT

### A.  The Motion Should Be Denied as to Count VIII (FTC Holder Rule)

As an initial matter, the Court should deny the Motion with respect to Count VIII, effectively as a matter of law. This is fundamentally because it's premature in that aspect, with Meritize's argument reliant upon the resolution of fact issues inappropriate for consideration at the pleading stage. Specifically, Defendant's lead point here is that the FAC "does not plead that Kilo Charlie referred Plaintiff to Meritize, that Kilo Charlie and Meritize are affiliated, or that Kilo Charlie and Meritize have a business arrangement."[30] Defendant's purpose in doing so is to argue that the FTC's Holder Rule cannot advance as a theory of liability because of a paragraph in the promissory note that it attached to the Motion.[31] Mr. Kelly's pleading, however, wasn't required to allege any of those things. A plaintiff needn't establish a *prima facie* case in a complaint.[32] Thereby, a plaintiff needn't allege every element of a claim or theory of liability to state a plausible claim for relief.[33] Given that Defendant's predicate argument is simply that

---

[28] *See, e.g.*, *Morphew*, 172 F.4th at 813 (quotation and citation omitted).

[29] *See Brown*, 124 F4th at 1264 (quotation and citation omitted).

[30] *See* Motion at 12.

[31] *See id.* (citing <u>Ex. A</u> at ¶ M.19.).

[32] *See, e.g.*, *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[33] *See, e.g.*, *id.*

Plaintiff didn't plead something that he wasn't required to plead, the Motion should be rejected out of hand in that respect, as it attempts to enforce a heightened, inappropriate pleading standard.[34]

Additionally, Plaintiff alleged that the loan application that Meritize accepted was "completed by Kilo Charlie personnel[.]"[35] This alone is sufficient to reasonably infer that Kilo Charlie may have somehow "referred Plaintiff to Meritize[.]"[36] Relatedly, it's entirely ordinary for businesses like Kilo Charlie to have financing partners, and it's wholly plausible that Meritize was/is such a partner. Relatedly, Defendant doesn't address what precisely referral, affiliation, or having a "business arrangement" might, or must, mean in this context; resolution of those issues would be premature at this early stage of litigation anyway.[37]

Mr. Kelly cannot know the particular contours of the relationship between Meritize and Kilo Charlie prior to discovery. The exhibit upon which the Motion depends, comprising Mr. Kelly's loan paperwork, is hardly sufficient to establish that Meritize and Kilo Charlie didn't maintain a referral relationship, affiliation, or otherwise "business arrangement."[38] And the FAC, including Kilo Charlie's named entity ("Kilo Charlie Holdings, LLC"), provides a sufficient basis by which to conclude that Kilo Charlie is a for-profit business. Discovery is required, and justified, in this regard as consideration of documentary evidence of Kilo Charlie and Meritize's relationship would extend well beyond the four corners of the operative pleading.

[34] *See* Motion at 12 ("The Complaint does not plead . . . .").
[35] FAC at ¶¶ 24, 27.
[36] *Compare id. with* Motion at 12.
[37] *See* Motion at 12; *e.g.*, *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).
[38] *See generally* Motion, Ex. A.

6

Defendant also argues that "there is no private 'holder rule' cause of action."[39] Mr. Kelly, however, clearly alleged the Holder Rule as a theory of liability: "The FTC Holder Rule imposes vicarious liability upon Meritize for all violations committed by Kilo Charlie."[40] Likewise, he pleaded "Meritize is subject to all claims and defenses that [Mr.] Kelly could assert against Kilo Charlie"[41] and "[Mr.] Kelly hereby asserts against Meritize all claims and defenses he has against Kilo Charlie [.]"[42] Defendant doesn't bother to explain how Count VIII entails a "cause of action" as opposed to the assertion of a theory of liability; perhaps one is meant to infer that this is because the Holder Rule is described as a "count" or "claim." Substantively, however, as just described, the FAC made it clear that the Holder Rule is a theory of liability.

In the case Meritize cites in support of its referral/affiliation/business arrangement argument, the court recognized, "had the [plaintiff] signed her loan contract after the 1992 amendments to the Higher Education Act, at which point the Secretary [of Education] incorporated the Holder Rule notice into the common promissory note, [the plaintiff] might well have a claim."[43] Plainly, the Holder Rule *can* apply to some educational loans, which is why Defendant put the "Holder Notice" in its promissory notes in the first place.[44] The Motion should be denied as to Count VIII.

---

[39] *See* Motion at 12.

[40] *See* FAC at ¶ 297.

[41] *See id.* at ¶ 295.

[42] *See id.* at ¶ 296.

[43] *See* Motion at 12; *Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.*, 168 F.3d 1362, 1367 (D.C. Cir. 1999).

[44] *See, e.g., Morgan v. Markerdowne Corp.*, 976 F.Supp. 301, 311 (D. N.J. 1997)("Such an analysis makes manifest that the FTC Holder Rule has always applied to guaranteed student loans.").

**B. Plaintiff Has Stated a Viable Claim for Violations of the Racketeer-Influenced and Corrupt Organizations Act ("RICO")(Count IX)**

Meritize moves to dismiss Count IX, for RICO violations, "because it does not sufficiently allege that Meritize participated in an enterprise or a pattern of racketeering activity."[45] Defendant asserts three underlying reasons for this: that Mr. Kelly "does not allege the existence of an enterprise"; "does not plead" that "Meritize engaged in any predicate activity"; and "does not plead a pattern of racketeering activity."[46] Meritize's RICO argument fails because it isolates selected allegations and ignores the pleaded association-in-fact enterprise, the alleged recruitment-financing scheme, and the specific Meritize email alleged to be false.[47]

As to the first reason, Plaintiff's supposed failure to "allege the existence of an enterprise," Meritize argues that "Plaintiff fails to allege any facts supporting these elements," where "these elements" refers to the few "components" set forth by Defendant, citing *Kearney v. Dimanna*, an unpublished opinion.[48] Defendant's argument comprises little more than general reference to four paragraphs (¶¶ 312-15) in the First Amended Complaint; Defendant's own broad construction (not literal analysis of) those selected paragraphs; and, finally, Defendant's summary conclusion that "Plaintiff alleges Meritize did nothing more than engage in commercial transactions with Kilo Charlie students[,]" which is "not enough to state a claim."[49]

However, Mr. Kelly alleged that Kilo Charlie and Meritize worked together to

---

[45] Motion at 13.

[46] *See id.* at 13-15.

[47] *Compare id. with* FAC at ¶¶ 303-33.

[48] *See* Motion at 13 (quoting *Kearney v. Dimanna*, 195 Fed. App'x 717, 720 (10th Cir. Aug. 30, 2006)).

[49] *See id.* at 13-14.

"recruit[] students into flight-training programs and profit[] from educational loans regardless of whether students receive[d] the training as promised."[50] This is not the same thing as merely "engag[ing] in commercial transactions with Kilo Charlie students[,]"which is presumably why paragraph 311 of the FAC was not mentioned.[51] Thus, Mr. Kelly alleged a systematic recruitment-funding scheme, whereby Meritize sent funds directly to Kilo Charlie on behalf of students, predicated on completion timelines that Defendant knew, or had every reason to know, were fraudulent.[52] In Mr. Kelly's case, Kilo Charlie refused to remit the balance of over $8,000 in his student account to Plaintiff, while Meritize confirmed that there were "no refunds due" him.[53] In this way, the enterprise, in effect, left Plaintiff obligated on the loan despite the alleged training failures at Kilo Charlie. This is substantively quite different from merely "engaging in commercial transactions with Kilo Charlie students" as it alleges a coordinated fraud perpetrated by an association-in-fact enterprise.

Plaintiff also pleaded, amongst other things, that "[d]espite [his] written documentation of specific training failures, safety violations, and extended delays, Meritize continued to accept Kilo Charlie's representations that the school was providing satisfactory training services.";[54] "Meritize continued to collect monthly payments and interest on [his] loan despite having knowledge of Kilo Charlie's documented failures to complete [his] training within the contracted 12-month

---

[50] *See* FAC at ¶ 311.
[51] *See* Motion at 13-14.
[52] *See* FAC at, *e.g.*, ¶¶ 27-28, 32, 80, 88, 123, 125-27.
[53] *See id.* at ¶¶ 108-10, 125.
[54] *Id.* at ¶ 126.

enrollment period.";[55] and "Kilo Charlie completed Meritize's loan applications on behalf of students, including inserting an 'Expected Completion Date' that Kilo Charlie knew was false based on the school's inability to deliver training within the stated timeframe."[56]

Meritize's argument largely or completely elides such allegations and, as stated, comprises nothing more than the point that "Plaintiff alleges Meritize did nothing more than engage in commercial transactions with Kilo Charlie students."[57] This, however, cannot be true given the aforementioned pleadings, and Defendant's failure to confront Mr. Kelly's allegations as actually pleaded means that it did not advance an argument for dismissal pursuant to Rule 12(b)(6) on the basis of Plaintiff's supposed "failure to allege the existence of an enterprise."[58] Mr. Kelly's non-conclusory allegations must be taken as true at this procedural stage and Defendant offers no argument as to conclusory or implausible pleadings with respect to a RICO "enterprise."[59] Even Defendant's sole point in this aspect is ultimately a non-point, as "commercial transactions" can obviously support civil RICO claims.[60] As this Court has recognized, "**RICO is to be read broadly**."[61] Combining this principle with the liberal Rule 12(b)(6) standard favoring Plaintiff, and that Defendant effectively failed to address 18 U.S.C. §

---

[55] *Id.* at ¶ 127.

[56] *Id.* at ¶ 313.

[57] *See* Motion at 13-14.

[58] *See id.*

[59] *See id.*; *see also*, *e.g.*, *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248-49 (10th Cir. 2016).

[60] *See*, *e.g.*, *George*, 833 F.3d at 1246-49 (plaintiffs stated a viable RICO claim based on home-mortgage transactions).

[61] *See Tronsgard v. FBL Fin. Grp.*, 312 F.Supp.3d 982, 990 (D. Kan. 2018)(quotation and citation omitted)(emphasis added).

1961(4) and related precedent altogether, and that Defendant's sole argument likewise does nothing to address whether Mr. Kelly alleged a RICO "enterprise," the Court should reject the Motion with regard to Plaintiff's purported failure to "allege the existence of an enterprise."

As to Mr. Kelly's alleged failure to plead that "Meritize engaged in any predicate activity"—i.e., mail or wire fraud—Defendant's sole point functionally ignores multiple corroborating allegations. Specifically, focusing on paragraphs 326 and 327 of the First Amended Complaint, Meritize argues that Plaintiff alleged "that the underlying statement by Kilo Charlie to Meritize" was false but not that Meritize's statement that "Kilo Charlie had worked with Plaintiff" was untrue.[62] However, Plaintiff literally alleged that "[t]his representation"—i.e., Meritize's email transmission—"was materially false[.]"[63] That is, the allegation of falsity literally referred to Meritize's statement writ large. Saliently, Meritize functionally ignores the role of "verified" in paragraph 326, which serves the purpose of describing Meritize's substantive, knowing affirmation of a false statement (i.e., that Kilo Charlie had in fact "worked with" Mr. Kelly as stated), not that Kilo Charlie had merely "reported" something to Meritize.[64] In this way, Defendant in the Motion again reconstructs Plaintiff's allegation and improperly construes it in its favor. Yet further, Mr. Kelly lodged allegations that Meritize knew of Kilo Charlie's training failures and yet parroted Kilo Charlie's excuses for the purpose of fully profiting from Plaintiff's student loan.[65] Thus, Defendant's only

---

[62] *See* Motion at 14-15.
[63] *See* FAC at ¶¶ 326-27.
[64] *Compare id.* at ¶ 326 *with* Motion at 14.
[65] *See* FAC at ¶¶ 123-28.

11

argument as to predicate acts is substantively incorrect, and improper given at this stage. Therefore, the Motion should also be denied with respect to "predicate activity."

Then, finally, Meritize asserts that "Plaintiff has not alleged that Meritize engaged in a pattern of wire fraud."[66] This argument, however, misses the entire point of RICO and the requisite "enterprise," which is definitionally not just Meritize.[67] Accordantly, Mr. Kelly alleged multiple predicate acts by the enterprise as part of a sustained pattern of racketeering.[68] Additionally, the First Amended Complaint contained a dedicated subsection entitled "Pattern Evidence from Other Students," including the allegation that, as of May 18, 2024, "approximately 40 students were in the check-ride queue[.]"[69] Plaintiff has indeed sufficiently pleaded the existence of such a pattern. Hence, Defendant ends up offering an appeal about legislative intent—"Plaintiff's RICO claims are a far cry from the type of ongoing, criminal enterprise that the RICO statute was enacted to prevent"—that offers nothing substantive as to why Mr. Kelly has supposedly failed to state a claim.[70] The Motion should be denied as to Count IX.

### C. Plaintiff Has Stated a Viable Claim for Violations of the Kansas Consumer Protection Act ("KCPA")(Count II)

Meritize argues that Mr. Kelly has failed to assert a viable claim for KCPA violations "because he alleges no false statement, omission, or unconscionable conduct with particularity. Additionally, Plaintiff's few conclusory allegations regarding conduct

---

[66] *See* Motion at 15.
[67] *Compare id. with* 18 U.S.C. § 1961(4).
[68] *See* FAC at ¶¶ 319-20, 322-31.
[69] *See id.* at ¶ 87.
[70] *See* Motion at 15.

by Meritize each squarely contradict clear language in the Loan Agreement."[71] Here, Defendant quickly belies that its essential argument will be predicated on a misrepresentation as it states unqualifiedly that "Plaintiff's KCPA claim sounds in fraud."[72] Yet, as this Court recognized in the case cited by Defendant, the application of Fed. R. Civ. P. 9(b) by federal courts to KCPA pleadings is germane to "allegations of deceptive trade practices under the KCPA," which are explicitly distinct from unconscionable ones.[73] However, Mr. Kelly explicitly alleged multiple *unconscionable* practices, which needn't "sound in fraud."[74] Presumably realizing this, Meritize lumps these allegations in with those lodged pursuant to K.S.A. 50-626 for the sake of making its "particularity" argument.[75]

Meritize doesn't argue that Plaintiff's allegations cannot entail violations of the KCPA. Rather, it just asserts its points about particularity while conflating K.S.A. 50-626 and 50-627.[76] Thus, Defendant doesn't mount any credible argument regarding Mr. Kelly's allegations of unconscionability, which are plainly stated in paragraph 200 and related pleadings.[77] Further, Defendant misstates the law as it turns the "deceptive bargaining conduct or unequal bargaining power"[78] needed for unconscionability into

---

[71] *See id.* at 6.

[72] *See id.*

[73] *See id.*; *Collins v. Ascencion Via Christi Hosps., Inc.*, Case No. 22-cv-1223-JAR-RES, 2023 WL 3318315, at *1, *6 (D. Kan. May 9, 2023); *see also* K.S.A. 50-626, 50-627.

[74] *See* FAC at ¶ 200.

[75] *See* Motion at 6 ("Plaintiff's KCPA claim fails because he alleges no false statement, omission, or unconscionable conduct with particularity.").

[76] *See id.* at 7 ("Plaintiff claims in conclusory fashion that the conduct underlying each of Meritize's three purported misstatements or omissions were unconscionable practices . . . .").

[77] *See* FAC at ¶ 200.

[78] *See State ex rel. Stovall v. ConfiMed.com, L.L.C.*, 272 Kan. 1313, 1323 (Kan. 2002).

"supplier deception and unequal bargaining power."[79] Additionally, the unequal bargaining power between Meritize and Mr. Kelly can be directly inferred from the evident fact that the loan agreement submitted by Defendant was a contract of adhesion.[80] This assertion is buttressed by a variety of pleadings in the First Amended Complaint, which allege, as stated, that Kilo Charlie completed the loan application on Mr. Kelly's behalf and that the loan agreement itself contained unconscionable provisions, including that Plaintiff was required to pay back the loan *even if the school didn't provide services*.[81] Clearly, Mr. Kelly alleged that the act or practice of collecting on a debt where services hadn't even been provided was unconscionable, which unconscionable act or practice is self-evidently embraced by K.S.A. 50-627(b)(3).[82] And, with specific regard to Defendant's point about "particularity," there can be no reasonable doubt that Mr. Kelly pleaded that unconscionable act or practice, including Meritize's *deception* in that regard,[83] with sufficient particularity as he alleged Kilo Charlie's misrepresentations and failures; Meritize's knowledge of Kilo Charlie's misrepresentations and failures; numerous dates and the overall timeline of those misrepresentations and failures; the cost of attendance and repayment terms; and the germane contractual provision across dozens of paragraphs.[84]

The unconscionability of an act or practice is a question of law for the Court.[85]

---

[79] *See* Motion at 8 (quoting *Schneider v. U.S. Bank, N.A.*, Case No. 20-2162-JAR-GEB, 2020 WL 4673159, at *1, *6 (D. Kan. Aug. 12, 2020)).

[80] *See* Motion, Ex. A; *e.g.*, *Wayman v. Amoco Oil Co.*, 923 F.Supp. 1322, 1341-42 (D. Kan. 1996).

[81] *See* Motion, Ex. A at 7; FAC at, *e.g.*, ¶¶ 3, 27, 29, 68, 126-27, 197.

[82] *See* FAC at ¶ 184.

[83] *See id.* at, *e.g.*, ¶¶ 125-26.

[84] *See id.* at, *e.g.*, ¶¶ 3-4, 21-24, 29-30, 32, 36, 44-45, 48-50, 57, 59, 68, 125-26.

[85] *E.g.*, *State ex rel. Stovall v. DVM Enters., Inc.*, 62 P.3d 653, 657 (Kan. 2003).

What Mr. Kelly described in the First Amended Complaint wasn't a mere "bad bargain"[86] but rather an ongoing arrangement between a for-profit flight school and student lender, whereby the lender knew that the school wasn't rendering essential services at all for undue periods of time and yet turned a blind eye as it continued to send funds directly to Kilo Charlie while attempting to place all financial risk on the students, regardless of circumstances, via an unconscionable practice and underlying unconscionable provision in a contract of adhesion. This, again, is the sort of conduct overtly embraced by K.S.A. 50-627(b)(3), as well as K.S.A. 50-627(b)(1) and (b)(5). Given that Meritize neglected to squarely address such considerations altogether, including these enumerated unconscionability provisions that embrace the misconduct alleged by Mr. Kelly against Meritize, the Motion should be denied with respect to Count II.

### D.  Plaintiff Has Stated a Viable Claim for Negligence (Count VI)

In arguing that Count VI, for negligence, should be dismissed at the pleading stage, Meritize naturally ignores the well-known principle that foreseeability of harm, which is a question of fact, may give rise to a duty of reasonable care.[87] Instead, Defendant, as lenders almost uniformly do when sued for negligence, argues that the "lender-borrower relationship creates no special duty."[88] Yet, various federal courts have acknowledged a duty of care relative to common-law negligence claims against

---

[86] *See* Motion at 8.

[87] *Compare id.* at 11 *with, e.g., Nero v. Kan. State Univ.*, 861 P.2d 768, 779 (Kan. 1993); *Estate of Kuebler by and through Coleman v. Kan. Village at Old Town, LLC*, 589 P.3d 46, 53 (Kan. Ct. App. 2026)("The foreseeability of a risk of harm is also generally a question of fact. It is only when reasonable persons could arrive at only one conclusion that the court may determine the question as a matter of law.").

[88] *See* Motion at 11 (quoting *Daniels v. Army Nat'l Bank*, 249 Kan. 654, 657 (Kan. 1991)).

lenders/creditors by consumers under particular circumstances.[89] Put differently, there's no bright-line rule in any jurisdiction holding that lenders simply cannot owe their customer-borrowers a legal duty of care, ever—this is a fact-specific inquiry. Saliently, as emphasized already, Mr. Kelly repeatedly informed Meritize of the situation at Kilo Charlie, and Defendant eventually "escalated" his dispute.[90] Thereby, Defendant was on express notice of the harm Mr. Kelly was suffering because of Kilo Charlie, and Meritize purported to investigate the situation. Defendant even represented to Plaintiff that it had "verified" that the delays to Plaintiff's training program were "uncontrollable" because of weather and a shortage of designated pilot examiners.[91] Thereby, this fact pattern indicates a situation in which Meritize knew of the harm being suffered by Mr. Kelly; affirmatively claimed, at least by direct implication, that it would somehow investigate the situation at Kilo Charlie per the supposed escalation of Plaintiff's dispute; and yet came back to Mr. Kelly with nothing more than a reiteration of Kilo Charlie's falsehoods so that Plaintiff's loan, and the interest being charged thereon, would remain intact.[92] On these facts, the negligence claim is not a repackaged contract claim. It rests on Meritize's alleged post-notice conduct: escalating Plaintiff's dispute, relaying Kilo Charlie's explanation, and continuing collections despite notice of Kilo Charlie's alleged failures. That independent-duty theory is sufficient at the pleading stage.

---

[89] *See, e.g., Parrish v. Chase Bankcard Servs., Inc.*, Case No. 1:13-CV-01504-AT-JFK, 2014 WL 12572735, at *1, *6 (N.D. Ga. June 10, 2014), report and recommendation adopted, Case No. 1:13-CV-1504-AT, 2014 WL 12575839 (N.D. Ga. July 17, 2014); *Wolfe v. MBNA Am. Bank*, 485 F.Supp.2d 874 (W.D. Tenn. 2007).

[90] *See* FAC at ¶¶ 123-24.

[91] *See id.* at ¶ 124.

[92] *See id.* at ¶¶ 124-27.

## IV.    CONCLUSION

For the foregoing reasons, the Motion should be **DENIED**.

**DATED: July 9, 2026**

Respectfully submitted,

*/s/ Bryce B. Bell*
Bryce B. Bell KS#20866
**BELL LAW, LLC**
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
*Attorney for Plaintiff*

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed with the Court's e-filing system on July 9, 2026, and therefore emailed to all attorneys of record on July 9, 2026.

*/s/ Bryce B. Bell*